OPINION OF THE COURT
Frank P. Milano, J.
The primary issue raised by the parties’ motions requires the court to decide whether section 12 (1) of the Court of Claims Act precludes entry of default judgment against the State of New York. Claimants move for judgment and defendant cross-moves in opposition thereto “for relief from the alleged default and to extend the State’s time to appear or answer, or, in the alternative, compel claimants to accept the answer.”
Although claimants denominate their request for relief as seeking judgment under section 12 (1) of the Court of Claims Act, the papers submitted make clear that it is a default judgment pursuant to CPLR 3215 that is the desired relief. Section 12 (1) of the Court of Claims Act does not provide a mechanism by which to obtain a default judgment. CPLR 3215 provides the means by which a default judgment is obtained. Accordingly, the court is treating claimants’ motion as an application for a default judgment under CPLR 3215 (see Court of Claims Act § 9 [8], [9]).
The claim, founded in contract, alleges that claimants were the lessors of certain real property located in New York City and that defendant was the lessee of that property. The lease provided for yearly payment of additional rent by defendant based upon increased operating costs when compared to an agreed-upon base year.
Beginning in February 2006, claimants sought additional rent based upon increased operating costs for the year ending *572 December 31, 2005. The parties disagreed as to the amount of the additional rent owed although defendant conceded then and concedes now that some additional rent is owed. In 2007, claimants again sought additional rent based upon increased operating costs for the year ending December 31, 2006. The parties again disagreed as to the amount of the additional rent owed although defendant again conceded then and again concedes now that some additional rent is owed.
On July 31, 2008, claimants moved for permission to file a late claim. The motion was made on notice to defendant and defendant opposed the motion. By decision and order filed October 30, 2008, claimants were granted permission to file and serve a late claim. Claimants did so, filing the claim on November 28, 2008, and serving it on the Attorney General’s New York City office by certified mail, return receipt requested, on November 28, 2008. The Clerk of the Court of Claims acknowledged filing of the claim in a letter (which is attached to the filed claim) to claimants’ attorney dated December 15, 2008. A “cc” of the Clerk’s letter acknowledging the filing of the claim was provided to the Office of the Attorney General.
On February 10, 2009, claimants’ attorney telephoned the Assistant Attorney General who had represented the defendant on the late claim application, advising that a claim had been filed and inquiring about a discovery schedule. The Assistant Attorney General advised claimants’ attorney that “the Court would fix a schedule for discovery after it processed DOL’s answer.”
In March or April 2009, claimants’ attorney again telephoned the Assistant Attorney General and asked why “no answer had been served with respect to [the] claim.” The Assistant Attorney General told claimants’ attorney she would “check the file and call him back.”
The Assistant Attorney General then “checked the file” and “consulted with the clerks who open the mail and input claims into the computer system.” According to the Assistant Attorney General, the “computer system” did not “indicate receipt of a claim.” The Assistant Attorney General apparently did not contact either the Clerk of the Court of Claims or the Attorney General’s Albany Claims Bureau to inquire whether the claim had been filed and served.
The Assistant Attorney General then telephoned claimants’ attorney and advised that “we had no record of having received a claim” and asked that claimants’ attorney fax a copy of the *573 claim and proof of its service. The Assistant Attorney General states that despite two further requests for the claim and proof of its service, she was not provided either by claimants’ attorney.
Claimants’ attorney states that during one of his telephone conversations with the Assistant Attorney General, he “read her the information from our file concerning service of the Claim, including the proof of delivery from the Post Office.” He further recalls mailing a further copy of the claim to the Assistant Attorney General but has no record of the mailing.
After these communications in March or April of 2009, the next communication between the Assistant Attorney General and claimants’ attorney was service of the motion in late June 2009 seeking judgment, seven months after the claim had been filed and served.
Defendant first contends that “Section 12 (1) of the Court of Claims Act prohibits entry of default judgment against the State,” alone citing a Court of Claims decision from 2004, Jacobs v State of New York (UID No. 2004-031-005, claim No. 105897, motion Nos. M-66287, M-66811, Jan. 20, 2004).[1] Other Court of Claims decisions, before and after 2004, in different types of cases, have expressed the same conclusion (see Gibson v State of New York, UID No. 2000-017-611, claim No. 101212, motion No. M-61208, Dec. 20, 2000; Green v State of New York, UID No. 2002-011-513, claim No. 104740, motion No. M-64451, Feb. 19, 2002; Soto v State of New York, No. 2006-036-505, claim No. 111181, motion No. M-70854, Jan. 27, 2006; Risch v State of New York, No. 2009-009-012, claim No. 116190, motion Nos. M-76203, M-76306, June 2, 2009).
If defendant means, and the above-cited Court of Claims decisions are propounded to mean that section 12 (1) of the Court of Claims Act precludes, absolutely, the entry of a default judgment against the State, this court respectfully disagrees. Neither the language or history of section 12 (1) nor appellate case law support the proposition that section 12 (1) precludes entry of a default judgment against the State.
Court of Claims Act § 12 (1) provides that “[i]n no case shall any liability be implied against the state. No judgment shall be granted on any claim against the state except upon such legal evidence as would establish liability against an individual or corporation in a court of law or equity.”
*574 The statute’s prohibition against implication of liability against the State has no application here and does not preclude a default judgment being entered against the State.
Defendant’s liability here is not implied. Indeed, beyond the proof contained in the affidavit of a managing member of claimants, as part of claimants’ application for judgment, they have also provided proof of defendant’s concession that it owes claimants additional rent under the lease. Defendant’s liability is express and direct for breach of the lease agreement.
Further, the historical purpose and significance of the “implied liability” prohibition of section 12 (1) (formerly contained within Code of Civil Procedure § 264) is explained in Smith v State of New York (227 NY 405 [1920]). At the time Smith was decided, the State could not be held liable for the tortious acts of its officers and agents (Smith at 410; see Brown v State of New York, 89 NY2d 172, 180 [1996] [for a discussion of Smith]).
Responding to the Smith claimant’s suggestion that jurisdiction to hear a private claim for damages, growing out of the negligence of its officers and agents, necessarily implies that the State has waived immunity from liability therefor, the Smith court stated (at 410) that
“[t]he answer to the suggestion is that the section itself precludes any implication of such waiver in the declaration that ‘in no case shall any liability be implied against the state.’ The liability of the state has not been enlarged and it is not true that whenever an individual is hable for a certain act the state is hable for the same act.”
Smith also explained that the State’s waiver of immunity from suit is not equivalent to a waiver of immunity from liability (at 409-410):
“[B]y consenting to be sued, the state waives its immunity from action and nothing more. It does not thereby concede its liability in favor of the claimant or create a cause of action in his favor which did not theretofore exist. It merely gives a remedy to enforce a liability and submits itself to the jurisdiction of the court, subject to its right to interpose any lawful defense . . . Immunity from an action is one thing. Immunity from liability for the torts of its officers and agents is another. Immunity from such liability may be waived by some positive enactment of the *575 legislature.”
Smith demonstrates that the “implied liability” language of section 12 (1), far from being interpreted to act as a bar to entry of a default judgment against the State, is intended to make clear that the State’s waiver of immunity from suit neither waived previously recognized bases of immunity from liability nor implied that the State would be subject to suit for causes of action not previously actionable.
Smith was overcome by enactment of section 12-a (now section 8) of the Court of Claims Act in 1929. Viewing Smith as holding that Code of Civil Procedure § 264 (containing the “implied liability” language now found in section 12 [1] of the Court of Claims Act), in conferring jurisdiction on the Court of Claims to entertain claims brought against the State, did not provide claimants new legal authority to recover against the State beyond those bases of liability previously recognized under the law, the Legislature responded by enacting section 12-a (see Brown v State of New York, 89 NY2d 172, 180 [1996]) to overcome the ruling in Smith. Now enumerated at section 8 of the Court of Claims Act, it provides:
“The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations, provided the claimant complies with the limitations of this article.”
This makes clear that not only has the State waived its immunity from suit, it has also waived its immunity from liability and will be held liable in those instances where liability is established to the extent required in Supreme Court against individuals or corporations, provided the claimant also complies with the limitations of the Court of Claims Act.
Neither Smith's discussion or treatment of the “implied liability” language now found in section 12 (1) of the Court of Claims Act nor the Legislature’s reaction to Smith in enacting what is now section 8 of the Court of Claims Act provide support for the proposition that the language now found in section 12 (1) acts as a bar to the entry of a default judgment against the State.
Consequently, under section 8 of the Court of Claims Act, the defendant is to be treated the same as an individual or a corporation in Supreme Court. Further, there is no allegation *576 that claimants have failed to comply with the requirements of the Court of Claims Act in prosecuting their claims.
The second sentence of Court of Claims Act § 12 (1) reads: “No judgment shall be granted on any claim against the state except upon such legal evidence as would establish liability against an individual or corporation in a court of law or equity.” An appellate decision which discusses the “legal evidence” sentence of section 12 (1) indicates that the statute’s second sentence is intended to complement the prohibition against “implied liability” contained in the statute’s first sentence. Employing much the same logic the Smith court did 65 years earlier in analyzing the “implied liability” language in the first sentence, Ames Contr. Co. v City Univ. of NY., Herbert H. Lehman Coll. (108 AD2d 609, 611 [1st Dept 1985]) explains that
“Court of Claims Act § 12 (1) provides: ‘[n]o judgment shall be granted on any claim against the state except upon such legal evidence as would establish liability against an individual or corporation in a court of law or equity.’ ... In establishing the Court of Claims, the State waived its common-law immunity from suit. By waiving sovereign immunity, however, the Legislature did not intend to subject the State to liability in excess of that recognized under traditional theories of contract law or to prevent the State from defending against contract actions as in ‘a court of law or equity.’ ”
Beyond that appellate discussion, none of which can be read to mean that the language of Court of Claims Act § 12 (1) bars the entry of a default judgment against the State, consideration must additionally be given to section 12 (l)’s requirement that judgment be based upon “legal evidence.”
Black’s Law Dictionary (at 578 [7th ed 1999]) defines “legal evidence” as follows: “All admissible evidence, both oral and documentary, of such a character that it reasonably and substantially proves the point rather than merely raising suspicion or conjecture.”
Claimants have provided sworn facts, based upon personal knowledge of a managing member of the claimants, demonstrating a prima facie case of defendant’s liability for money owed to claimants under the lease and, through affirmation and affidavit, have further demonstrated defendant’s failure to answer the filed and served claim.
The legal sufficiency of the evidence presented by claimants is further demonstrated by the admission of defendant that it *577 owes claimants money under the lease, though insisting not as much as demanded by claimants.
The court finds that the evidence provided by claimants on their motion for judgment is “legal evidence as would establish liability against an individual or corporation in a court of law.” (Court of Claims Act § 12 [1].) The fact that claimants will not be required to personally appear and testify in a courtroom to establish defendant’s liability (although they would be required to do so with respect to damages due under the lease) does not preclude entry of a default judgment at this juncture. The Court of Claims routinely grants summary judgment on liability to claimants based upon out-of-court affidavits and exhibits standing alone and without requiring in-court testimony be provided (see CPLR 3212 [b], [c]).
Moreover, the evidence offered by claimants satisfies both Court of Claims Act § 12 (1) and CPLR 3215 (f), the section which governs the proof required to support an application for a default judgment. The provision of “legal evidence” necessary to support any judgment against the State has been mentioned in connection with applications for default judgments, but never specifically described (see Spickerman v State of New York, 85 AD2d 60 [3d Dept 1982, Casey, J., dissenting]; Powell v State of New York, UID No. 2003-016-066, claim No. 103912, motion No. M-66836, Sept. 5, 2003; Powell v State of New York, UID No. 2002-016-073, claim No. 103912, motion Nos. M-64745, CM-65029, Sept. 20, 2002).
To the extent it could be argued the two statutes’ (Court of Claims Act § 12 [1] and CPLR 3215 [f]) use of different words create different standards of proof necessary to establish liability and to obtain default judgment against the State (“legal evidence” under section 12 [1] of the Court of Claims Act being needed to obtain any type of judgment against the State and “proof of the facts constituting the claim” under CPLR 3215 [f] being needed to obtain a default judgment in Supreme Court), this court disagrees. The more complete language of section 12 (1), “legal evidence as would establish liability against an individual or corporation in a court of law or equity” (emphasis added), mandates that the State be treated the same as a private litigant, and therefore directs the reader to CPLR 3215 (f) to determine whether the moving party is entitled to default judgment, irrespective of the State’s status as the sovereign, and irrespective that the judgment being sought is a default judgment. Further, nei *578 ther the statutes’ language nor case law speak of, or require, a higher standard of proof in order to obtain a default judgment against the State, as opposed to a private litigant. In order to obtain a default judgment against any party, the evidence presented to the court may not be conclusory, must have evidentiary value, and must provide “some firsthand confirmation of the facts” (St. Paul Fire & Mar. Ins. Co. v Eastmond & Sons, 244 AD2d 294 [1st Dept 1997], quoting Joosten v Gale, 129 AD2d 531, 535 [1st Dept 1987]).
To summarize, where, as here, a claim went unanswered, and there is in the application before the court “legal evidence as would establish liability against an individual or corporation in a court of law or equity” (Court of Claims Act § 12 [1]), the State is to be treated as any other litigant and it may have a default judgment entered against it. Indeed, provided the proof requirements of CPLR 3215 are met, and absent reasonable excuse for the default and a showing of a meritorious defense to the claim, section 8 of the Court of Claims Act requires such a result. Upon this application, evidence sufficient to entitle claimants to default judgment exists.
In Driscoll v New York State Attorney General’s Off. Litig. Unit (69 AD3d 515, 516 [1st Dept 2010]) the Court, without elaboration, stated: “The motion court correctly denied claimant’s motion for a default judgment as contrary to Court of Claims Act § 12 (1).” No further discussion or mention of section 12 (1), or analysis of its meaning or discussion of its application, is made.
In Driscoll (at 516), the Appellate Division modified, on the law, a decision of the Court of Claims (which had denied claimant’s motion for a default judgment), and dismissed the underlying claim for the Court of Claims lack of subject matter jurisdiction:
“[T]he underlying claim, inter alia, does not comply with the pleading requirements of Court of Claims Act § 11 (b) (see Kolnacki v State of New York, 8 NY3d 277, 280 [2007]; Lepkowski v State of New York, 1 NY3d 201, 206-207 [2003]) and seeks judicial review by the Court of Claims of claimant’s divorce proceedings (see Court of Claims Act § 9 [2]). Hence, such dismissal is warranted.”
Given that the Appellate Division dismissed the underlying claim because the Court of Claims lacked subject matter jurisdiction, the discussion of section 12 (1) is considered by this *579 court to be obiter dictum because it was “not necessary to the holding” (Hoffman v Parade Publs., 65 AD3d 48, 52 [1st Dept 2009]).
Assuming for the sake of argument that the Appellate Division’s discussion of Court of Claims Act § 12 (1) is precedential, this court does not read its holding to mean that section 12 (1) bars, absolutely, the entiy of a default judgment against the State. Rather, the claimant’s motion for a default judgment was viewed by the Appellate Division as properly denied, because the claimant failed to prove, in the words of the trial court, “elements necessary to a valid cause of action.”
In the underlying action, Driscoll v State of New York (UID No. 2009-016-025, claim No. 115969, motion No. M-76366 [Ct Cl, May 19, 20093) the trial court stated: “a default judgment against the State of New York is not permitted in the Court of Claims; a judgment against the State may be obtained only if a claimant proves the elements necessary to a valid cause of action.” The court went on to cite the entire language of section 12 (1). The Appellate Division’s decision, in reviewing and approving the full statement made by the trial court, concluded that default judgments are not permitted against the State unless a claimant “proves the elements necessary to a valid cause of action.” In the underlying Driscoll action, unlike here, claimant failed to provide sufficient proof of a valid cause of action. Consequently, denial of claimant’s motion for default judgment was appropriate because of claimant’s failure to meet section 12 (l)’s obligation to provide legal evidence necessary to establish liability for judgment. It is further noted that the Appellate Division described claimant’s motion for default judgment “as contrary to” section 12 (1), language which is consistent with a review of the trial court’s full statement (69 AD3d at 516). The Appellate Division did not state that the default judgment relief sought in the motion “is prohibited by” section 12 (1).
Beyond evaluating and carefully considering the language, facts and holding of Driscoll v New York State Attorney General’s Off. Litig. Unit (supra), this court was strongly guided by two appellate decisions in concluding that Court of Claims Act § 12 (1) does not preclude the entry of a default judgment against the State, and that the State is to be treated, with respect to a default judgment application, just the same as an individual or corporate defendant.
In Spickerman v State of New York (85 AD2d 60 [3d Dept 1982]), the defendant State failed to file or serve an answer to a *580 claim alleging personal injuries due to defendant’s negligence in constructing and maintaining a highway. The Court of Claims denied the claimant’s application for a default judgment and granted defendant’s motion to vacate its default. The Spickerman court agreed that the “defendant should be relieved of its default in answering,” stating (at 61) as follows:
“Although defendant argues that under the doctrine of sovereign immunity a default judgment for failure to serve and file a timely answer may not be entered against the State, we need only consider whether, under the facts presented in this case, the Court of Claims abused its discretion in denying claimant’s motion. Admittedly, the failure to serve an answer was an oversight, a circumstance which ordinarily would fall into the category of ‘law office failure’, and without more would be insufficient to excuse a default . . . However, when, as here, the default in answering is not willful, the defaulting party moves expeditiously for relief and the nondefaulting party is not unduly prejudiced, a court has discretion to permit the interposition of an answer under traditional concepts of permitting a litigant, against whom a claim is made, to have his day in court, particularly when there is no intention to abandon the matter and a defense on the merits exists.”
The Spickerman court, pointedly declining defendant’s invitation to issue a blanket ruling that a default judgment may not be entered against the State and further declining to address the dissent’s assertion that defaults by the State must be treated differently than defaults by private litigants, focused instead on determining “whether” the Court of Claims abused its “discretion” in denying claimant’s motion for a default judgment against the State (85 AD2d at 61).
Accordingly, this court concludes that Spickerman does not stand for the defendant’s argument made there, “that under the doctrine of sovereign immunity a default judgment for the failure to serve and file a timely answer may not be entered against the State” (Spickerman, 85 AD2d at 61). To the contrary, the Spickerman majority affirmed the Court of Claims proper exercise of its discretion in denying claimant’s motion for default judgment against the State.
As to those who would cite the Spickerman dissent in support of the idea that a default judgment may not be entered *581 against the State (see Gibson, UID No. 2000-017-611; Green, UID No. 2002-011-513; Powell, UID No. 2003-016-066, supra), this court finds the majority opinion to mean otherwise, and that inherent in the majority’s use of the term “discretion” exists the authority for the Court of Claims to either grant or to deny a claimant’s application for default judgment against the State.
Whitfield v State of New York (28 AD3d 541 [2d Dept 2006]), which involved a dental malpractice action in which the defendant State failed to file and serve an answer to an amended claim, is additionally instructive on this point. The Court of Claims denied the claimant default judgment relief and permitted the State to late file an answer, finding the defendant’s default excusable and that claimant would suffer no prejudice if defendant was permitted to answer.
The Whitfield court (at 541-542) analyzed the claimant’s appeal from the trial court decision just as it would any other litigant’s similar appeal:
“The Court of Claims providently exercised its discretion in denying that branch of the claimant’s motion which was for leave to enter a judgment against the defendant upon its failure to serve and file an answer to his amended claim and in granting the defendant’s cross motion to vacate its default[2] and to compel the claimant to accept service of its answer to the amended claim. A court may vacate a default where the defendant demonstrates both a reasonable excuse for the default and the existence of a meritorious defense . . . The defendant established a reasonable excuse for the default attributable to law office failure . . . Furthermore, the affirmation of the defendant’s attorney established that the default was not willful or deliberate, and there was no evidence of prejudice to the claimant . . . Moreover, the defendant’s proposed answer set forth allegations sufficient to demonstrate the existence of a potentially meritorious defense.”
*582 If, as defendant asserts, Court of Claims Act § 12 (1) prohibits entry of a default judgment against the State, how, it may reasonably be asked, could the Court of Claims in Whitfield have possessed any “discretion” to either grant claimant a default judgment or not, and thereafter be subject to review by the Appellate Division as to whether it “providently exercised its discretion” in denying claimant default judgment relief (28 AD3d at 542).
Finally, it is noteworthy as well that Court of Claims Act § 9 (8) provides that the Court of Claims has jurisdiction
“[t]o open defaults; to vacate, amend, correct, or modify any process, claim, order or judgment, in furtherance of justice for any error in form or substance; before entry of judgment, to reopen a trial and permit submission of further evidence; to grant a new trial upon any grounds for which a new trial may be granted in the supreme court.”
Section 9 (8), it must be observed, in no way limits the court’s jurisdiction to opening only a claimant’s default. The court is further mindful that neither upon enactment nor amendment to sections 8, 9 (8) or section 12 (1) of the Court of Claims Act has the Legislature chosen to prohibit the entry of a default judgment against the State, when expression of such prohibition would have been simple and logical, choosing instead to specifically articulate in section 8, and section 12 (1) for that matter, that there is to be no difference in the treatment of the State and private litigants when assessing entitlement to judgment.
The court, based upon review of statutory and case law, concludes that Court of Claims Act § 12 (1) does not preclude, absolutely, entry of a default judgment against the State.
Now addressing the defendant’s cross motion to vacate its “alleged default,” the law requires that in order “[t]o vacate a default judgment, a defendant must show a reasonable excuse for the default and the existence of a meritorious defense” (Nilt, Inc. v New York State Dept. of Motor Vehicles, 35 AD3d 937, 938 [3d Dept 2006]). Proof of a reasonable excuse and a meritorious defense “are required to excuse a default even if a default judgment has not yet been entered” (Juseinoski v Board of Educ. of City of NY., 15 AD3d 353, 357 [2d Dept 2005]).
The defendant has shown neither a reasonable excuse for its default nor a meritorious defense to its liability for damages in failing to pay additional rent under the lease.
*583 The defendant knew a claim was permitted to be filed and served within 45 days of the issuance of the court’s decision and order of October 30, 2008, which granted claimants’ application for permission to file a late claim. Once the claim was filed, the Clerk of the Court of Claims advised the Office of the Attorney General of the filing by forwarding a copy of a letter dated December 15, 2008 which provided confirmation of the filing to claimants. Thereafter, the defendant was advised at least twice (in February 2009 and again in March or April 2009) by the claimants’ attorney that a claim had been filed and served. Despite this, defendant never took the simple step of contacting either the Clerk of the Court of Claims, where the claim was filed, or the Attorney General’s Albany Claims Bureau. Defendant took no action to vacate its default until confronted with an application for a default judgment in late June 2009, seven months after service of the claim. Defendant has failed to offer a reasonable excuse for its default (see Nilt, 35 AD3d at 938 [attorney’s failure to answer complaint despite courtesy letter sent by plaintiff’s counsel not excusable]; Heidari v First Advance Funding Corp., 55 AD3d 669 [2d Dept 2008] [attorney’s failure to serve answer for over three months after knowledge of action not excusable]).
Even were the defendant’s foregoing actions or inactions adjudged to be a reasonable excuse for defendant’s default (and they have not), the defendant fails to meet the additional requirement necessary to vacate its default that a meritorious defense be shown, since it has conceded that it owes additional rent under the lease although it contests the amount of such additional rent (see Mortgage Elec. Registration Sys., Inc. v Schuh, 48 AD3d 838 [3d Dept 2008], appeal dismissed 10 NY3d 951 [2008] [challenge to amount due not a meritorious defense to liability on note and mortgage]).
Claimants are granted a default judgment as to liability. An assessment of damages will be scheduled on notice to defendant and defendant may participate in the damages inquest to the extent permitted by CPLR 3215 and relevant case law, including cross-examining witnesses and offering testimony and other proof in mitigation of damages (see Rokina Opt. Co. v Camera King, 63 NY2d 728 [1984]; Amusement Bus. Underwriters v American Intl. Group, 66 NY2d 878, 880 [1985]; Eden Park Health Servs. v Estes, 2 AD3d 1186 [3d Dept 2003]; D D & P *584 Realty, Inc. v Robustiano, 68 AD3d 1496 [3d Dept 2009]; Singh v Friedson, 36 AD3d 605 [2d Dept 2007], lv dismissed 9 NY3d 861 [2007]).
Defendant’s cross motion is, in all respects, denied.

. This and other decisions of the Court of Claims may be found at www.nyscourtofclaims.state.ny.us.

. Specifically, the Court of Claims, to no difference in practical effect, did not grant defendant’s cross motion to vacate its default, but denied the cross motion as moot in light of its decision to permit the State to file and serve a late answer, which the Court of Claims described as an “exercise of discretion” (Whitfield v State of New York, 20 Misc 3d 1113[A], 2005 NY Slip Op 52366DJ], *3 [Ct Cl 2005]).